PEOPLE v. SANSONI.

SAME v. MAXSON.

1. ARREST—WITHOUT WARRANT—EVIDENCE.
   Any police officer may, without a warrant, arrest a person when he has reasonable cause to believe a felony has been committed and reasonable cause to believe that the person committed it (CL 1948, § 764.15).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–5]  5 Am Jur 2d, Arrest § 25.
[6]  47 Am Jur, Searches and Seizures § 19.
   Right of search and seizure incident to lawful arrest, without a search warrant.  32 ALR 680, 51 ALR 424, 74 ALR 1387, 82 ALR 782.

2. SAME—PROBABLE CAUSE.

Determination that officer had reasonable cause to believe the person arrested without a warrant committed a felony must depend upon the situation in a particular case (CL 1948, § 764.15).

3. SAME—WITHOUT WARRANT—PROBABLE CAUSE.

Probable cause for an arrest without a warrant for felony is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty (CL 1948, § 764.15).

4. SAME—WITHOUT WARRANT—PROBABLE CAUSE.

Probable cause for arrest without a warrant does not depend on the actual state of the case as it may turn out upon investigation, but on knowledge of facts and circumstances which would be sufficient to induce a reasonable belief in the truth of the accusation (CL 1948, § 764.15).

5. CRIMINAL LAW—ARREST—EVIDENCE.

Police officer had reasonable grounds to suspect the defendants had committed the felony of attempting to break a safe, vault, or depository of money with intent to commit a larceny, and their arrests in Allegan county without warrants were proper where the officer authorizing the arrest knew of reports of burglaries of 2 churches; defendants were first seen early in the morning after the burglaries were discovered; their appearance indicated that they had not abandoned their car and walked to gasoline station as they said since the streets and sidewalks were clear of snow and their shoes and trousers were wet from the knees down; their story concerning their being sent from Chicago to repossess a car worth $100 was unbelievable; and they asked a taxi to take them to bus station after being refused rental of a car, but changed their minds and requested the taxi driver to take them to Kalamazoo (CL 1948, § 750.531).

6. SEARCHES AND SEIZURES—ARREST WITHOUT WARRANT—INCIDENTAL SEARCH.

A reasonable search of the person and place where the arrest without a warrant is made is proper.

Appeal from Ottawa; Smith (Raymond L.), J. Submitted Division 3 December 7, 1967, at Grand Rapids. (Docket Nos. 3,029, 3,757.) Decided March 29, 1968. Application by defendant Sansoni

for leave to appeal denied June 25, 1968. See 381 Mich 757. Application by defendant Maxson for leave to appeal denied October 10, 1968. See 381 Mich 782.

Joseph Sansoni and William Maxson were convicted of attempting to break a safe, vault, or depository of money with intent to commit a larceny. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James W. Bussard,* Prosecuting Attorney, for the people.

*Robert S. Bailey, Arthur E. Englland,* and *Roper, Meyers & Hann,* for defendant.

Holbrook, P. J. These two cases are governed by the same set of facts and were joined together in this Court for oral argument and decision. Defendants Joseph Sansoni and William Maxson were charged in separate informations with attempting to break a safe, vault, or depository of money located in the Faith Christian Reformed Church with intent to commit a larceny.* Before trial, defendants filed a motion to suppress evidence seized from them at the time of their arrest. Defendants claimed on the motion that the officer who authorized the arrests did not have reasonable grounds for believing that defendants committed any criminal offense, that no crime was committed in the officer's presence, and therefore the arrests were illegal and the evidence seized should be suppressed.

The trial judge after hearing testimony denied the motion to suppress. The defendants were tried separately by a jury and each was convicted and sentenced to prison.

---

* CL 1948, § 750.531 (Stat Ann 1954 Rev § 28.799).

Defendants appeal raising the single question: *Did the trial court err in denying the motion to suppress the evidence seized on the basis that the arrests were illegal?* Defendants assert that the Holland police did not have reasonable cause for arrest in that there were insufficient facts present for believing that defendants had committed the felony.

The pertinent facts necessary to a decision in this case are accurately stated in the trial court's opinion denying the motion to suppress, *viz.*:

"The issue before the court is whether the Holland police department officer, who authorized the arrest of defendants herein, had such information that would induce a fair-minded person of average intelligence and judgment to believe that a felony had been committed and that defendants had committed it.

"The following facts and information had been supplied to this officer prior to the time he authorized the arrest:

"Two churches in the city of Holland had been broken into the night before and a safe in each church cracked. At about 7:30 a.m., December 21, 1964, the day after the break-ins, two strangers came into the Clark gasoline station on Michigan avenue, located midway between the two churches. These strangers stated that they wanted to use the phone. They called the Hertz Car Rental Agency and talked to the manager, Jerry Horne. Mr. Horne dispatched a cab to pick them up and convey them to his office to discuss the rental. Mr. Horne also operated the Holland Cab Company. They asked to rent a car to drive to Chicago claiming that they had been hired in Chicago to repossess a car in Traverse City, Michigan, but that the car broke down just outside of Holland in the course of driving it back to Chicago. In describing the repossessed car these strangers indicated it was of

such a vintage as to arouse the suspicion of Mr. Horne that their story lacked veracity. As Mr. Horne indicated in his testimony: no one in his right mind would hire two men to go to all the trouble and expense of repossessing such an old car. Mr. Horne desired some evidence of responsibility before he hired out a car to these two men but was given only a drivers license and selective service card. To add to this suspicion, Horne noticed that both men had wet shoes and that their trousers were wet from the knees down. There was evidence that the city had plowed all the roads and sidewalks following a snowfall the previous night.

"When Mr. Horne refused a car rental he suggested the men catch the 8:30 a.m. Greyhound bus to Chicago and offered to take the men in a cab to the bus station without charge. When the two strangers arrived at the bus station they inquired of the cab driver whether he would drive them to Kalamazoo, Michigan. The driver agreed and notified Mr. Horne of the change in plans. Mr. Horne insisted the driver get his fare in advance and the cab and strangers left for Kalamazoo sometime shortly after 7:40 a.m.

"Mr. Horne was concerned about the two strangers and immediately called the police department and gave the above information to the answering officer. When informed about the church break-ins he suggested that the two strangers could be the wanted burglars. The call for the arrest went out and the strangers were apprehended in the city of Otsego, Allegan county, Michigan, and returned to Holland. An examination of their clothes and shoes resulted in their being charged with the above offenses. They now petition the court to suppress the evidence seized after the above arrest on the ground that there existed no reasonable grounds to make the arrest.

"In the opinion of the court reasonable grounds existed in the mind of Officer Ver Scheur at the time he authorized the apprehension of defendants.

Defendants had been traced from the vicinity of the crimes, had given a suspicious story about their presence in Holland, had shown no concern about a car which was their responsibility, could not wait 40 minutes for a bus to Chicago, changed their minds about their destination, did not appear to have come out of a car by reason of their wet feet and trousers and two churches had been broken into. Under such circumstances, a fair-minded person of average intelligence would have been induced to believe that defendants were connected with the crime. In the opinion of the court the arrest was lawful and the subsequent search of defendants legal.

"The petition to suppress is denied."

The defendants assert that the search and seizure of the evidence was contrary to their constitutional rights, and cite Const 1963, art 1, § 11 which provides:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures."

And US Const, Am 4 which provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

The defendants cite *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933) in support of their claim that the evidence seized from defendants should have been suppressed. The State of Ohio had followed the rule that evidence obtained by an unlawful search and seizure may be admitted in a criminal prosecution, under the decision of the Supreme Court of the United States in *Wolf* v. *Colorado* (1949), 338 US 25 (69 S Ct 1359, 93 L Ed 1782) which ruled a State was not prevented by the Federal Constitution from adopting

this rule. Although the search and seizure in *Mapp* was concededly unlawful, the Ohio courts affirmed on the basis of *Wolf*. The United States Supreme Court reversed holding that, as a matter of due process, evidence obtained by a search and seizure in violation of the 4th Amendment is inadmissible in a State court as it is in a Federal court under the 14th Amendment. In *Mapp* the search and seizure was unlawful. Until it is determined in the instant case that the search and seizure was unlawful, the *Mapp* case is not applicable because the facts are not analogous.

We must determine first, was there a lawful arrest? In CL 1948, § 764.15 (Stat Ann 1954 Rev § 28.874) it is stated in part as follows:

"Any peace officer may, without a warrant, arrest a person * * *

"(d) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it."

The important question in this case then is, were there sufficient facts known to the officer authorizing the arrests without a warrant to have reasonable cause to believe that a felony has been committed and the persons arrested have committed it. In *People* v. *Harper* (1962), 365 Mich 494, 501, Mr. Justice Souris in speaking on probable cause stated in part as follows:

"Its existence depends in every case upon the peculiar circumstances confronting the arresting officer. *People* v. *Orlando* (1943), 305 Mich 686, 689. He makes his determination, and we review it, not as a legal scholar determines the existence of consideration in support of a promise, but as a man of reasonable prudence and caution would determine whether the person arrested has committed

a felony. See *Hammitt* v. *Straley* (1953), 338 Mich
587, and the cases referred to therein."

In determining whether an arrest without a war-
rant is lawful, we turn to the case of *Hammitt* v.
*Straley, supra,* in which Mr. Justice BOYLES stated
on pp 593, 594 as follows:

"The defendant's testimony was undisputed, and
was corroborated by the testimony of Mrs. Sidwell.
Under the circumstances, did the officer have rea-
sonable cause to believe that a felony had been
committed and that Hammitt had committed it?
If so, the arrest without a warrant was legal. CL
1948, § 764.15(d) (Stat Ann 1954 Rev § 28.874[d].).

" 'Whether an officer has reasonable cause to be-
lieve the person arrested committed a felony must
depend upon the situation in the particular case.'
*People* v. *Orlando.* * * *

" ' "Probable cause for an arrest has been defined
to be a reasonable ground of suspicion supported
by circumstances sufficiently strong in themselves
to warrant a cautious man in believing the accused
to be guilty. Yet probable cause does not depend
on the actual state of the case in point of fact, as
it may turn out upon legal investigation, but on
knowledge of facts and circumstances which would
be sufficient to induce a reasonable belief in the
truth of the accusation."

" 'While stated by courts and textbook writers in
different language, the test, as was said in *People*
v. *Wilson* (1885), 55 Mich 506, seems to be: Were
there "any facts which would induce any fair-
minded man of average intelligence and judgment
to believe" that defendant had committed a felony?
Tiffany on Criminal Law (How 4th ed), p 92, thus
puts it:

" ' "Any constable or sheriff may arrest any per-
son whom he suspects, on reasonable grounds, of
having committed a felony." * * *

" 'While the rights of individuals to be pro-
tected from unwarranted arrests must be carefully

guarded, the rights of the public must also be considered. Robberies and holdups are now so frequent, and the opportunity to get away quickly so convenient, that unless officers may act promptly on information apparently reliable and circumstances reasonably convincing, there is but little hope of apprehending the guilty parties. If the officer must delay to ascertain that the information received comes from a responsible person, in many cases the opportunity to arrest will have passed. That officers do make arrests on such information, and that they are complimented on their promptness in doing so, is a matter of common knowledge.' *People* v. *Ward* (1924), 226 Mich 45."

We conclude that the facts known to the officer authorizing the arrests in the instant case were: reports of burglaries in 2 churches in the vicinity where the defendants were first seen; the time was early morning shortly after the burglaries were discovered; defendants' appearance indicated that they had not abandoned their car on the highway nearby and walked to the gasoline station as they stated, but had evidently gone through a field or brush where snow was present because their shoes and trousers were wet from the knees down; the streets and sidewalks were clear of snow at the time; that their story concerning their being sent from Chicago to pick up a car at Traverse City worth approximately $100 and their willingness to abandon it was not believable; that they wanted to rent a car to go to Chicago but upon being refused asked a taxi to take them to the bus station to go to Chicago and then requested the taxi driver to take them to Kalamazoo. All these facts add up to a reasonable conclusion that the burglaries were committed by these 2 defendants, and the arrests without warrants were legal.

We have previously ruled in *People* v. *Panknin* (1966), 4 Mich App 19, that a reasonable search of the person and place where the arrest is made is proper.

Under the facts in the instant case we conclude the search and seizure of the evidence was reasonable.

Affirmed.

BURNS and J. H. GILLIS, JJ., concurred.